Nov. Term,
1855.

KENTON
v.
ROBBINS.

---

### KENTON and Others *v.* ROBBINS.

*A.* had an equitable lien, by note for unpaid purchase money, on land bought by *B*. *B*. died intestate, seized of the land, and also of another tract, and leaving surviving him a widow and ten heirs, most of whom were minors. After *B*.'s decease, the widow and one of the heirs and *C.* (who was informed of all the facts, no fraud having been practised,) met, and agreed between themselves that *C.* should receive the latter-named tract in satisfaction of said note. Pursuant to the agreement, the widow and said heir executed to *C.* a penal bond, conditioned that they would make or cause to be made to *C.* a deed in fee for the premises, conveying a clear title. *C.* thereupon surrendered to the administrator of *B.* the note, &c. The obligors in the title-bond did not, nor could they, comply with the condition of the bond. *Held*, that the note, by being surrendered to the administrator, was extinguished; that *C.*'s remedy was upon the bond; and that *B.*'s estate could not be made liable.

*Wednesday,*
*November 28.*

APPEAL from the *La Grange* Circuit Court.

DAVISON, J.—Bill in chancery by the appellee against the appellants, to enforce a vendor's lien, &c. The facts are substantially these:

In *January*, 1839, one *Caleb Van Ausdol* sold a tract of land in *La Grange* county to *Kelly* and *Ford*, for 2,000 dollars, on which they paid 300 dollars, and then sold the same land to *John* and *Frederick Robbins*, who refunded the last-named sum to *Kelly* and *Ford*, and agreed to pay

Nov. Term, 1855.

KENTON
v.
ROBBINS.

the residue of the purchase money, viz., 1,700 dollars, to *Van Ausdol*. At this time *John* and *Frederick* held the receipt of an attorney residing at *Marion*, *Ohio*, for a claim of 1,000 dollars, in his hands for collection, which claim they gave to *Van Ausdol* in part payment of the 1,700 dollars, and at the same time delivered him the above receipt. After this, *Van Ausdol* purchased the land back from them for 1,800 dollars, it being stipulated in the contract of sale that he should retain the money which he had collected on said claim, and the balance then due on it; whereupon he gave them two notes, one for 450 dollars, and another for 647 dollars, for the amount due on account of said purchase. When these notes were given, the parties understood them to be a lien on the land at that time sold and conveyed to *Van Ausdol*. The latter note, which is the subject of the present suit, was afterwards sold and delivered by *John* and *Frederick Robbins* to *Isaac Robbins*, the appellee.

In *May*, 1843, *Van Ausdol* died in *Ohio*, where he then resided, and one *William Holler*, under the laws of that state, became his administrator. At his death he was still the owner of the land for which the above notes were given, and another tract situate in *Jasper* county, containing one hundred and sixty acres. When *Van Ausdol* died, he left a widow and ten heirs, who, with one *Alexander Fleming*, are the appellants, and were the defendants below; the said *Fleming* having purchased of said heirs three-tenths of the land bought of *John* and *Frederick Robbins*. About the 13th of *August*, 1840, *Isaac Robbins*, the appellee, *Elizabeth Van Ausdol*, the decedent's widow, and *Cornelius Van Ausdol*, one of said heirs, met together at *La Grange*, when it was agreed between them that *Robbins* was to receive the land in *Jasper* county, in satisfaction of his note. Pursuant to this agreement, *Elizabeth* and *Cornelius* executed to *Robbins* a bond in the penalty of 750 dollars, conditioned that they would make, or cause to be made to him a deed in fee for said land, conveying to him a clear title to the same. Thereupon *Robbins* delivered up the note in question to *Holler*, the administrator, who

was then present.   After this, the administrator placed the note in the hands of *Cornelius Van Ausdol*, with directions to cut the signatures off of it.   This was done; and in that condition the said *Cornelius* handed the note to *Robbins*, at his request, and under a promise to return it, which he failed to do.   The note, thus mutilated, is exhibited in the bill.   When the bond was given, and the note delivered to *Holler*, *Robbins* was told that the most of *Van Ausdol's* heirs were minors; and he then knew that *Elizabeth Van Ausdol* was only entitled to a dower right in the premises, and that the interest of *Cornelius* was not more than a title to one undivided tenth of the lands sold. Further, it was then understood by the parties that *Robbins* would, at his own cost, make an effort to procure title through the Probate Court.   With this view, *Robbins* obtained letters of administration on *Van Ausdol's* estate, and about the same time took possession of the land for which he held the title-bond; but having failed to procure such title, he was, some two or three years afterwards, removed from office as administrator, and being notified by the guardian of some of said heirs to leave the premises, he accordingly left them.   It appears that *Holler*, the first named administrator, having shown to the Court that the note was liquidated in the manner above stated, was permitted to make final settlement, &c.

The bill prays that a special equitable lien, in favor of *Isaac Robbins*, on the land in *La Grange* county, be decreed; that the same be sold for the payment of said debt, &c., and should said land prove insufficient for the purpose, then that the land in *Jasper* county be sold, &c.; and for general relief.

The Court, upon a final hearing, decreed that *Isaac Robbins* recover 1,018 dollars; that for the payment of said note he had no specific lien on the land in *La Grange* county, but that he was entitled, as a creditor of said estate, to subject its property to the payment of his debt. Wherefore the Court ordered that all the above land situate in *La Grange* county, excepting the three-tenths purchased by *Fleming*, be sold to satisfy the amount found

Nov. Term, 1855.

KENTON
v.
ROBBINS.

due by this decree, and should any residue of such amount remain unpaid after the application of the proceeds of such sale, then, for the payment of such residue, the *Jasper* land was to be sold; and should there still be an unpaid balance, in such case the said three-tenths were directed to be sold, &c. It was further decreed that the bond executed by *Elizabeth* and *Cornelius Van Ausdol* be delivered up, &c.

Against this decree it is alleged that the appellee's remedy was at law, on the title-bond, and not in equity; that the acceptance of the bond was a merger of the note—a satisfaction of it. We might add, that when the present suit was commenced, the note was not in existence. It had been surrendered up to the proper administrator of *Van Ausdol's* estate, as fully paid and cancelled. This was evidently the result of the agreement upon which the note was placed in the administrator's hands, unless it can be inferred that there was fraud in the transaction. The evidence on the record, in our opinion, will allow of no such inference. It is true that *Robbins*, when he agreed to receive the bond in lieu of the note, evinced no great degree of skill in managing that branch of his business: still he was not the victim of any practised deception, because his knowledge of the facts connected with the agreement upon which the bond was executed and note given up, was at least equal to that of those with whom he contracted. Nothing in the evidence before us conduces to prove that the contract was either unfair or illegal. It violates no rule of law, is founded on a consideration which the law will not adjudge inadequate, and must therefore be considered binding on the parties.

It is said in argument, that the equity of the case made by the proofs, is sufficient to sustain the decree, independent of fraud. This position is untenable. The land, at the time of the contract, was in value nearly the amount of the note, and it was not without the verge of probability that the vendors would make such an arrangement with the other heirs of said estate as would enable them to make or cause to be made a valid title to the premises.

Thus far they have not fulfilled their engagement. But this is nothing more than an ordinary failure to comply with a contract to convey real estate, for which the parties themselves have provided an ample remedy at law on the bond. Had the vendee a right to rescind? This the appellee says is the real question in the case. But the transaction was, in point of law, fair, was untainted with fraud, and the means. of information relative to the title and value of the property sold, were equally accessible to both parties, and they have dealt upon equal terms. Such being the case, it seems to us that a Court of equity should not interfere with the contract. This Court has decided that "the failure of the obligor to comply with the conditions of a bond executed for the sale of land, is no ground of equitable jurisdiction for the cancellation of the instrument." *Shoup* v. *Cook*, 1 Ind. R. 135. But suppose this view to be incorrect, what would be the proper result of a rescission of the agreement? Evidently a decree against the vendors for the amount paid for the land, with interest; not against the heirs of *Van Ausdol*, because they were wholly unconnected with the contract of sale. There are, no doubt, cases where a party holding a claim against an estate, may, in chancery, enforce it against the decedent's heirs. *Whitney's Heirs* v. *Kimball*, 4 Ind. 546. But here there is really no demand against the estate of *Van Ausdol*. The note, the only claim which *Robbins* seeks to recover, has, upon a valid consideration and without fraud, been surrendered up to the proper administrator and cancelled, and he, in consequence of such surrender and cancellation, was allowed to proceed to a final settlement.

It follows that *Robbins*, at the time this suit was instituted, was not, on account of the note, a creditor of said estate. His only appropriate remedy is against the vendors on their bond. We know of no principle of equity that would recognize their liability as a demand against *Van Ausdol's* heirs.

It is, however, contended that "the equity is clear upon the vendor's lien." While the note existed in the hands

of the appellee, the amount for which it was given, being purchase-money, was plainly a lien, in equity, on the land bought by the payees of the note of *Caleb Van Ausdol;* but we have seen that pursuant to a valid contract, it passed into the hands of the legal representative of his estate, with the consent of the holder, as fully satisfied and discharged; and being thus satisfied, the vendor's lien, of course, ceased to exist.

The above conclusions seem to result from the material facts of the case.

We think the complainant was not entitled to the relief granted.

The decree must therefore be reversed, and the Circuit Court ordered to dismiss the bill without prejudice.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*R. Brackenridge,* jr., for the appellants.

*J. B. Howe,* for the appellee.